**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **TYRONE HAYES JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ACTS 2:38 FAITH DELIVERANCE,** | ) | **No. 1:23−cv−01116-STA-jay** |
| **INC., CHURCH OF JESUS CHRIST** | ) | |
| **OF THE APOSTOLIC d/b/a FAITH** | ) | |
| **DELIVERANCE APOSTOLIC** | ) | |
| **CHURCH; DENARD WILLIAMS; and** | ) | |
| **RANDALL HOOKER,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER DENYING MOTION TO SET ASIDE DEFAULT JUDGMENT
AND
ORDER OF REFERENCE**

Plaintiff Tyrone Hayes, Jr., filed this action against various church entities, Bishop Denard Williams, and Randall Hooker for the alleged sexual abuse of Plaintiff by Defendant Hooker. Plaintiff asserted claims of negligence, negligent hiring, retention, and supervision, negligence per se, and breach of fiduciary duty against the church defendants and claims of battery, assault, false imprisonment, intentional infliction of emotional distress, and invasion of privacy against Defendant Hooker. Because he failed to file an answer or otherwise respond to the complaint, default was entered by the Clerk of the Court against Defendant Hooker on October 30, 2023, and a motion for default judgment was granted on December 19, 2023.[1] The matter was referred to the Magistrate Judge for a determination of Plaintiff's damages. (ECF No. 21.)

---

[1] The church entities and Bishop Williams have been dismissed from the action by stipulation of

On December 20, 2023, an evidentiary hearing on the issue of damages was set for February 1, 2024. Defendant Hooker was notified by mail of the hearing. (ECF No. 22.) The hearing was subsequently continued until February 28, 2024, upon motion of Plaintiff. (ECF No. 24.) Plaintiff was instructed to notify Defendant Hooker of the re-setting.

On January 31, 2024, an attorney filed a notice of appearance on behalf of Defendant (ECF No. 25), a motion to continue the hearing (ECF No. 26), and a motion to set aside the default judgment on the ground that Defendant believed that the attorney for the church entities and Bishop Williams also represented him and that he was not aware of the default judgment until the setting of the damages hearing. (ECF No. 27.) Plaintiff filed a response to the motion on February 13, 2024. (ECF No. 33.) The motion to set aside the default judgment was referred to the Magistrate Judge on that same date. (ECF No. 34.)

A hearing before the Magistrate Judge was held on February 28, 2024, on both the issue of damages and whether the default judgment should be set aside. Plaintiff testified and presented two witnesses, and Defendant testified on his own behalf. The parties filed post-hearing briefs (ECF Nos. 50-53) which the Magistrate Judge considered in making his recommendation, along with the testimony and exhibits presented at the hearing.

The Magistrate Judge issued his report and recommendation on October 23, 2024. (ECF No. 54.) He recommended granting the motion to set aside default judgment and, therefore, did not make a recommendation as to damages. Plaintiff filed objections to the report. (ECF No. 55.) Defendant Hooker did not respond to the objections.

If a party objects within the allotted time to a Report and Recommendation, as did Plaintiff, the Court "shall make a *de novo* determination of those portions of the report or specified proposed

the parties. (ECF Nos. 16, 43.)

findings or recommendations to which objection is made." 28 U.S.C. § 636(b) (1); *see also* Fed.

R. Civ. P. 72(b). Parties must file specific objections. "[T]he filing of vague, general, or conclusory

objections does not meet the requirement of specific objections and is tantamount to a complete

failure to object." *Cole v. Yukins*, 2001 WL 303507 *1 (6th Cir. March 19, 2001) (citing *Miller v.

Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

The Magistrate Judge first set out the well-established standard for setting aside a default

judgment.

> When an entry for default ripens into a default judgment, any subsequent motion to
> set aside the default judgment will be considered under Rule 60(b) of the Federal
> Rules of Civil Procedure. *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006).
> *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th
> Cir. 1983) is the seminal case in the Sixth Circuit and encourages courts to apply
> Rule 60(b) "equitably and liberally." *United Coin Meter* tasks courts with using the
> same factors that are found in Rule 55(c), "(1) whether the opposing party would
> be prejudiced; (2) whether the proponent had a meritorious claim or defense; and
> (3) whether the proponent's culpable conduct led to the default." *Id.* This Court
> must weigh the competing interests of "favoring the finality of judgments" and
> construing "all ambiguous or disputed facts in the light most favorable to the
> defendant." *Id.* (citing *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290,
> 292 (6th Cir. 1992); *INVST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d
> 391, 398 (6th Cir.1987)). Ultimately, "any doubt should be resolved in favor of the
> petition to set aside the judgment so that cases may be decided on their merits."
> *United Coin Meter*, 705 F.2d, at 845 (quoting *Rooks v. Am. Brass Co.*, 263 F.2d
> 166, 169 (6th Cir. 1959)).
>
> Under *Waifersong*, the Rule 60 analysis begins, and often ends, under the
> culpability analysis. 976 F.2d, at 292. Unlike Rule 55(c), a court must apply a
> heightened standard under Rule 60, requiring a defendant to show that the
> circumstances fall into the enumerated grounds for relief provided in Rule 60(b).
> *Burrell*, 434 F.3d, at 832. Here, Hooker seeks relief under two enumerated grounds:
> "(1) mistake, inadvertence, surprise, or excusable neglect; . . . (6) any other reason
> justifying relief from the operation of judgment." Only after the party makes a
> showing that their culpable conduct led to the default "may the district court
> proceed to consider the other *United Coin Meter* factors." *Weiss v. St. Paul Fire
> and Marine Inc. Co.*, 283 F.3d 790, at 794 (6th Cir. 2002). As such, this Court
> begins with the culpability analysis.

(Rep. & Rec. pp. 4-5 (record citation omitted)).

In looking at culpability, the Magistrate Judge considered Defendant's assertions that he mistakenly believed that he was represented by counsel and that he did not receive the request for entry of default or motion for default judgment prior to the granting of default judgment.

In support of Defendant's belief that he was represented by his co-Defendants' attorney(s), the Magistrate Judge looked at Defendant's testimony that he contacted his co-Defendants' counsel's office on three occasions and was told that the office was busy and that they would get back with him; he assumed that, because the attorneys were representing the church and Bishop Williams they were also representing him; although he did not sign a retention agreement with the firm, he was unaware that such an agreement is customary when preparing for a federal civil suit; co-Defendants' counsel requested a fifteen-day extension on Defendant's behalf; and Defendant never received any communication from co-Defendants' counsel that he was not their client. The Magistrate Judge noted that he must resolve any doubt in favor of Defendant's testimony under *United Coin Meter* and then determined that Defendant was "excusably mistaken about being represented by his co-Defendants' counsel." (*Id.* at p. 6.)

In light of the preference for deciding cases on the merits, the Court finds that it must reluctantly disagree with the Magistrate Judge's decision. First, Defendant presented no outside evidence, such as testimony from co-Defendants' attorneys, that they had engaged in any communication with him that would have led him to believe that they represented him. Defendant testified that Bishop Williams told him who was representing him and the church and, from that exchange, Defendant "assumed" that they would also represent him without any facts to back up his assumption. Finally, Defendant testified that he did not speak with co-Defendants' attorney(s); instead, he contacted their office and was told that someone "would get back with him," although they never did.  He was merely "under the impression that [he] was somehow being represented

as well." "I thought that, you know, that I would somehow be part of, be represented as well...."
(TR. pp. 8-9, ECF No. 41.) He acknowledged that his belief that he was being represented was an
"assumption" on his part. He also admitted that he never signed a retention agreement with co-
Defendants' counsel.

The Court finds that Defendant Hooker's "assumption" was not reasonable and does not
constitute excusable neglect under Rule 60. Defendant has presented no evidence showing a
plausible basis for his assumption. At no time did his co-Defendants or their counsel tell him that
he was being represented or take any action to mislead him. "Neither carelessness nor ignorance
of the law on the part of the moving party will justify relief under Fed. R. Civ. P. 60(b)(1)."
*Merriweather v. Wilkinson*, 83 F. App'x 62, 63 (6th Cir. 2003) (citations omitted).

As for the extension of time counsel sought on behalf of Defendant, Plaintiff's motion for
default judgment states that:

> On September 28, 2023, as a courtesy, counsel for Defendants Denard Williams
> and Acts 2:38 Faith Deliverance, Inc., Church of Jesus Christ of the Apostolic
> (hereinafter "Faith Deliverance") communicated with Plaintiff's counsel that
> Defendant Hooker had not yet obtained counsel and requested an extension on his
> behalf. Plaintiff's counsel agreed to extend a fifteen-day extension for Defendant
> Hooker to retain counsel and respond to the Complaint.

(Pl's Mot. p. 2, ECF No. 20.) The certificate of service states that the motion was served on
Defendant by certified mail. (*Id.* at p. 4.) If Defendant Hooker received the motion, then he would
have known that co-Defendants' counsel did not represent him. If he did not receive the motion,
then the request for an extension of time on his behalf could have played no role in his actions.

Moreover, Defendant was on notice from the date that he was served with the complaint
that he must file an answer within twenty-one days of September 7, 2023 (ECF No. 11), and yet
he ignored that directive. If nothing else, he could have submitted a pro se letter or motion to the
Court asking for additional time to confirm that he was represented.

Defendant testified that he did not receive the request for entry of default at all and did not receive the motion for default judgment until January after the default judgment had been entered, although Plaintiff avers that both were sent to Defendant's home address by certified mail. After the entry of default, service on a party in default is not required under Fed. R. Civ. P. 5(a)(2). *See Jack Tyler Eng'g Co. v. Colfax Corp.*, 2011 WL 1256610, at *5, n.25 (W.D. Tenn. Mar. 31, 2011). Although Defendant testified that he did not receive Plaintiff's request for entry of default, there is a rebuttable presumption that a party receives the regular mail sent to him. Fed. R. Civ. P. 5(b)(2) & 77(d)(1) (serving notice of an order is made by "mailing it to the person's last known address— in which event service is complete upon mailing); *Rucker v. Potter*, 215 F. App'x 406, 408 (6th Cir. 2007)("there is a rebuttable presumption that mail is received by the person to whom it is addressed."); *see also In re Strauss Co., Inc.*, 2021 WL 4436159, at *7 (Bankr. E.D. Tenn. Sept. 27, 2021) (citing *Ellis v. Warren*, 2020 WL 364117, at *1 n.1 (M.D. Ga. Jan. 22, 2020) ("There is a rebuttable presumption that an item properly mailed was received by the addressee. When there is a certificate of service showing that the document was mailed to the intended recipient at his home address, it is presumed that the document was received.[2] After that, the mere denial of receipt, without more, is insufficient to rebut the presumption.") (internal quotation and editorial marks and citations omitted), appeal dismissed, 2020 WL 5033293 (11th Cir. June 23, 2020); *Portley-El v. Milyard*, 2006 WL 3371642, at *1 (D. Colo. Nov. 21, 2006) (finding that first-class mail is presumed delivered if properly addressed) (citation omitted)). In this case, Defendant has not rebutted the presumption that he received the documents. Therefore, this argument fails.

Because Defendant's culpable behavior led to the entry of default and subsequent default judgment, this factor weighs heavily against setting aside the default. As noted by Plaintiff,

---

[2] Defendant has not denied that Plaintiff used his correct address when mailing documents.

multiple courts have held that the moving party cannot carry its burden without showing that his culpable conduct did not lead to the default judgment. *See*, *e.g.*, *Manufacturers' Indus. Relations v. E. Akron Co.*, 58 F.3d 204, 209-210 (6th Cir. 1995) ("[A] thorough review of those cases indicates that the *result*, as a practical matter, almost invariably depends on the culpability factor.") (emphasis in original); *Weiss*, 283 F.3d at 793 ("[A] party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct."). Accordingly, the Court could stop its analysis at this juncture since it finds that Defendant was, in fact, culpable in failing to file an answer or timely defend against the complaint filed against him. However, the Court will proceed with the other two steps to complete the record.

Also weighing against setting aside the default is the lack of a meritorious defense. Defendant has presented two possible defenses – statute of limitations and laches. The Magistrate Judge explained that, under Rule 60, a defense is meritorious so long as "there is *some possibility* that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003) (emphasis in original). Moreover, the party seeking to set aside a default judgment is afforded great deference if the defense is "good at law, regardless of the likelihood of success...." *Burrell*, 434 F.3d, at 834 (citation and quotation omitted).

As stated by the Magistrate Judge, this Court has already rejected the statute of limitations defense when it was raised by the church entities and Bishop Williams. (ECF No. 19.) Thus, there is no possibility "that the outcome of the suit after a full trial will be contrary to the result achieved by the default" based on this defense. Although the Magistrate Judge allowed for the possibility

of a meritorious laches defense, Defendant barely raised that defense, which is an affirmative defense, and did not argue its applicability to his own case with any specificity.

"The defense of laches is based on the doctrine of equitable estoppel and is only applied [when] the party invoking it has been prejudiced by the delay." *Brown v. Ogle*, 46 S.W. 3d 721, 726 (Tenn. Ct. App. 2000). Accordingly, the defense of laches is sustained only in "comparatively rare cases." *Assocs. Asset Mgmt. LLC v. Blackburn*, 2017 WL 1077060, at *2 (Tenn. Ct. App. Mar. 22, 2017) (citing *S.M. Williamson & Co. v. Ragsdale*, 170 Tenn. 439, 95 S.W.2d 922 (1936)). When a defendant asserts an affirmative defense, such as laches, the defendant bears the burden of alleging undisputed facts that show the existence of the affirmative defense. *See Avery Place, LLC v. Highways, Inc.*, 2015 WL 8161848, at *5 (Tenn. Ct. App. Dec. 7, 2015) (citations omitted).

Plaintiff has thoroughly briefed the issue of whether laches may apply to action that has a statute of limitations, as in this case, and correctly states that, when there is a governing statute of limitations, the doctrine of laches may shorten that time period only when the plaintiff is guilty of "gross laches." *Hampton v. Macon Cnty. Bd. of Educ.*, 2014 WL 107971, at *4 (Tenn. Ct. App. Jan. 10, 2014). Gross laches may be established when the plaintiff "unreasonably acquiesces in adverse rights for a long duration of time," and the defendant is prejudiced by the "unjustified delay of the plaintiff." *Id.* Here, there has been no such showing. As this Court stated in its order denying co-Defendants' motions to dismiss (ECF No. 19), "[b]ecause Plaintiff filed suit within three years of receiving knowledge of facts sufficient to put him on notice that he had suffered an injury as a result of the alleged childhood sexual abuse, his claim is timely…." Defendant has presented no facts or law to convince the Court that its prior ruling was in error.

In examining the prejudice factor, the Magistrate Judge correctly determined that Plaintiff's assertion that he would be prejudiced by delay, standing alone, did not constitute

prejudice under the *United Coin Meter* factors. However, combined with Defendant's culpability and the lack of a meritorious defense, the delay to Plaintiff bolsters the Court's decision to deny setting aside the default judgment.

Because Defendant Hooker has not met the standard for setting aside a default judgment under Rule 60, the Court must reject the report and recommendation and deny Defendant's motion.

Plaintiff seems to suggest that he is entitled to a jury trial on the matter of damages. However, as explained in *3M Co. v. Premium Contractor Sol., LLC*, 2022 WL 1204865 (S.D. Ohio Apr. 22, 2022),

> Under Rule 55(b)(2), the Court may enter default judgment without a hearing, but it also may conduct a hearing or make a referral when "it needs to ... determine the amount of damages ... or ... investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B), (D). "'Where damages are unliquidated a default admits only the defaulting party's liability and the amount of damages must be proved.'" *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)) (alteration adopted); *see also Bell v. Zurich Am. Ins. Co.*, 156 F. Supp. 3d 884, 889 (N.D. Ohio 2015) ("[w]hen the amount of damages to be awarded pursuant to a default judgment is uncertain, the court must make further inquiry"). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj*, 331 F. App'x at 355 (internal quotation marks omitted). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (internal quotation marks omitted). This inquiry may include an evidentiary hearing, as well as consideration of affidavits or other documentary evidence in the record, to determine the appropriate amount of damages to be awarded. *Bell*, 156 F. Supp. 3d at 889 (a court may make further inquiry "through oral testimony at an evidentiary hearing, or through the submission of affidavits and other materials"). **"There is no right to a jury trial on a request for a default judgment, or as a manner of disputing damages following the entry of a default judgment."** *Id.*

*3M Co.*, 2022 WL 1204865, at *1 (emphasis added). Accordingly, the issue of Plaintiff's damages will be returned to the Magistrate Judge for a report and recommendation.

In summary, the report and recommendation of the Magistrate Judge to grant the motion to set aside default judgment is **REJECTED**, the motion to set aside default judgment is **DENIED**,

and the issue of Plaintiff's damages is **REFERRED** to the Magistrate Judge for a report and recommendation.

      **IT IS SO ORDERED.**

                                              **s/ S. Thomas Anderson**
                                              S. THOMAS ANDERSON
                                              UNITED STATES DISTRICT JUDGE

                                              Date:  December 5, 2024