IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| TYRONE HAYES JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ACTS 2:38 FAITH DELIVERANCE, | ) No. 1:23-cv-01116-STA-jay |
| INC., CHURCH OF JESUS CHRIST | ) |
| OF THE APOSTOLIC d/b/a FAITH | ) |
| DELIVERANCE APOSTOLIC | ) |
| CHURCH; DENARD WILLIAMS; and | ) |
| RANDALL HOOKER, | ) |
| | ) |
| Defendants. | ) |

**ORDER PARTIALLY ADOPTING REPORT AND RECOMMENDATION
ON DAMAGES**

Plaintiff Tyrone Hayes, Jr., filed this action against Acts 2:38 Faith Deliverance, Inc., Church of Jesus Christ of the Apostolic d/b/a Faith Deliverance Apostolic Church ("Faith Deliverance"); First Apostolic Council of Kentucky and Tennessee ("First Apostolic Council"); Pentecostal Assemblies of the World Inc. ("Pentecostal Assemblies"); Bishop Denard Williams; and Randall Hooker. Plaintiff asserted various claims of negligence and breach of fiduciary duty against the church defendants and claims of battery, assault, false imprisonment, intentional infliction of emotional distress, and invasion of privacy against Defendant Hooker. Subsequently, First Apostolic Council and Pentecostal Assemblies were voluntarily dismissed as defendants by Plaintiff, and Defendants Faith Deliverance and Williams were dismissed by stipulation of the parties. A default judgment was granted against Defendant Hooker on December 18, 2023. (ECF

No. 21.) Defendant Hooker subsequently filed a motion to set aside the default judgment, which the Court denied. (ECF No. 56.)

## Factual Background

Because a default judgment has been entered against Defendant Hooker, the following facts as alleged in the complaint have been established as true. *See New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022) (quoting 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2688 (4th ed. 2022) (explaining that the effect of a default judgment is that the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.")

Defendant Hooker sexually assaulted Plaintiff approximately twelve years ago when he was sixteen years old. Plaintiff was a member of Faith Deliverance, and Defendant Hooker was an ordained deacon of the church at the time of the alleged assault(s). After learning of the abuse, Faith Deliverance "ostracized Plaintiff and began praying to change his sexuality, failing to recognize the damaging sexual abuse that had occurred by an older, religious authority figure. At the same time, Defendants allowed Defendant Hooker to maintain his deaconship and position of authority in the church." Plaintiff learned that his PTSD, anxiety, depression, and other mental injuries were caused by his childhood sexual abuse in June 2020, when he was admitted to a hospital for a psychiatric evaluation.

## Report and Recommendation on Damages

The Court referred the issue of damages and Defendant Hooker's motion to set aside default judgment to the Magistrate Judge who conducted a hearing on February 28, 2024. Plaintiff and his two witnesses, Alicia Bunch Vargas and Victoria Frazier, testified at the hearing concerning his damages. (ECF No. 36.) Plaintiff, Ms. Bunch Vargas, and Ms. Frazier testified

2

concerning Plaintiff's claim for compensatory and punitive damages as the result of Defendant Hooker's battery, assault, false imprisonment, intentional infliction of emotional distress, and invasion of privacy. Plaintiff stated that he was seeking $450,154.71 in compensatory damages and $450,000 in punitive damages. Defendant Hooker did not call any witnesses although he testified on the issue of whether to set aside the default judgment entered against him.

After considering the post-hearing briefs filed by the parties (ECF Nos. 50-53), the Magistrate Judge recommended setting aside the default judgment and pretermitted a recommendation on damages. (ECF No. 54.) The Court rejected the recommendation, denied the motion to set aside the default judgment, and referred the issue of damages back to the Magistrate Judge. (ECF No. 56.) The Magistrate Judge has now issued a second report and recommendation (ECF No. 57) in which he recommends that Plaintiff be awarded $61,000 in compensatory damages and $20,000 in punitive damages for a total award of $81,000.[1]

In making his decision as to past and future pain and suffering, the Magistrate Judge considered Plaintiff's testimony that his diagnoses for PTSD, anxiety, and depression relate to his childhood sexual abuse by Hooker. He testified that he has suffered, and will continue to suffer, from panic attacks, insomnia, nightmares, tearful outbursts, tightness in his chest, inability to catch

---

[1] The breakout of the recommended compensatory award is as follows:

Past Physical Symptoms of Pain and Suffering: $ 5,000
Future Physical Symptoms of Pain and Suffering: $ 1,000
Past Mental Pain and Suffering: $ 10,000
Future Mental Pain and Suffering: $ 2,000
Past Loss of Enjoyment of Life: $ 12,000
Future Loss of Enjoyment of Life: $ 6,000
Future Medical Expenses: $ 25,000

    Total Compensatory Damages: $ 61,000

his breath, fatigue, inability to focus, lack of energy, and increased heart rate. The Magistrate Judge also looked at the testimony of Ms. Bunch Vargas, an expert witness, who summarized Plaintiff's medical records and affirmed that his symptoms were typical for victims of childhood sexual abuse, and the testimony of Plaintiff's friend, Ms. Frazier, that she has seen the anguish that Plaintiff suffers.

As for past and future loss of enjoyment of loss, the Magistrate Judge noted Plaintiff's testimony that the abuse had severely impacted his view on romantic relationships, his ability to trust others, his emotional stability, his ability to maintain employment, his spirituality and relationship with the church, and his relationships with relatives. Plaintiff contemplated suicide at one point in his life. Ms. Frazier confirmed this testimony.

Concerning future medical expenses, Plaintiff testified that his mental health has improved with therapy, but he cannot afford to pay a sexual trauma therapist. Ms. Bunch Vargas agreed that weekly therapy for a victim of childhood sexual abuse is recommended and may be necessary lifelong.

In making his recommendation, the Magistrate Judge considered this testimony as well as evidence in the record that

> Plaintiff's childhood appears to be rife with abusive conduct from family and church members alike. According to the testimony and exhibits provided at the damages hearing, the Plaintiff also experienced child sexual abuse at a pre-adolescent age, extensive physical and mental abuse at the hands of family members, and trauma stemming from other incidents of sexual abuse in the church. Plaintiff's expert witness did not testify that his current physical and mental anguish is directly or solely caused by Mr. Hooker's blatant misconduct. (Ms. Bunch Vargas was only able to testify that Plaintiff's diagnoses "*can* be related to the incident [with Mr. Hooker] when he was 16."

(Rep. & Rec. p. 4, ECF No. 57 (emphasis in original) (record citation omitted)). He noted that "[t]he preponderance of the evidence show that that Mr. Hooker's misconduct is likely a significant

factor in Plaintiff's diagnoses and ongoing issues, but not the sole factor." (*Id.* at p. 5.) He then reasoned as follows.

> Thus, the court must contemplate the extent of Mr. Hooker's conduct in context of all the contributing factors to Plaintiff's alleged damages. For example, it cannot be reasonably argued that Mr. Hooker's conduct will be the sole topic of conversation over fifteen years of weekly therapy sessions; thus, Mr. Hooker should not be on the hook for covering all of Plaintiff's therapy sessions. To be clear, this calculus is not intended to diminish or belittle the legitimate harm that Plaintiff suffered because of Mr. Hooker's conduct. At the same time, Mr. Hooker can only be held accountable for the harm that can be attributed to him by a preponderance of the evidence. *See* Tenn. Pattern Jury Instruction 14.01. Here, the Court reluctantly concludes that the preponderance of the evidence indicates that several traumatic incidents, including the abuse by Mr. Hooker, contribute to Plaintiff's alleged damages.

(*Id.*) Therefore, he recommended an award of $61,000 in compensatory damages.

The Magistrate Judge then reviewed the relevant law as to punitive damages and reiterated the standard that a court should apply in ensuring that a "grossly excessive" award is not made. A court must look to (1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the harm or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the remedy and the civil penalties imposed in comparable cases. (*Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996); *Cooper Indus., Inc. v. Leatherman Tool Grp.*, 532 U.S. 424, 435 (2001); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 (2003))). The Magistrate Judge applied those factors and recommended an award of $20,000 in punitive damages.

> In this case, Mr. Hooker's conduct was reprehensible. The harm was physical and continues to have a physical and emotional impact on the Plaintiff. Although the misconduct only happened on two isolated occasions, Plaintiff provided testimony that Mr. Hooker groomed him and acted with calculated intent over a period of months. After careful consideration of the factors described above and relevant jury awards in Tennessee and federal courts for similar conduct, the undersigned magistrate judge awards $20,000 in punitive damages.

(*Id.* at p. 7.)

Plaintiff objects that both recommended awards are too little, in particular the amount of punitive damages, while Defendant objects that they are too much and argues that Plaintiff did not prove that he was entitled to any award of damages.

### Standard of Review

Under the Federal Rules of Civil Procedure, when, as here, a party has objected to a report and recommendation, "the district judge must reject the magistrate judge's recommendation unless, on de novo reconsideration, he finds it justified." *See* 12 Wright, Miller, & Marcus, *Federal Practice and Procedure* § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed R. Civ. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *See Burnett v. Michigan*, 2024 WL 3466258, at *1 (W.D. Mich. July 19, 2024) (citing *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981)). In the present case, the Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the report and recommendation itself; and the parties' objections. After its review, the Court finds the Magistrate Judge's report and recommendation is factually sound and legally correct as to the amount of compensatory damages; however, the degree of reprehensibility of Defendant's conduct supports an increase in the amount of punitive damages.

Defendant objects to the recommended amount on the ground that Plaintiff's sexual trauma expert, Ms. Bunch Vargas, is not a psychologist or a psychiatrist and never personally evaluated Plaintiff. Instead, she merely reviewed Plaintiff's medical records and summarized the previous treatments of Plaintiff. She testified about sexual trauma victims in general and provided a general description of diagnoses that were listed in Plaintiff's medical records; however, her testimony did

6

not include the current mental state of Plaintiff nor her experience with his mental state in the past. (Def's Obj. p. 4, ECF No. 58.) He complains that her testimony did not relate to the trauma suffered by Plaintiff as the result of his conduct.[2] He also complains that her testimony was speculative and that there was no evidence that Plaintiff's trauma was caused by his actions rather than the other abuse Plaintiff was subjected to. Finally, he complains that Plaintiff did not present sufficient evidence showing the cost of future therapy.

In his objections (ECF No. 59), Plaintiff asserts that the recommendation of compensatory damages of $61,000 is the minimum amount that should be awarded and that the award of punitive damages should be significantly higher based on Defendant's conduct.

When, as here, a plaintiff's damages are not capable of ascertainment from definite figures contained in documentary evidence, they require "proving up" through an evidentiary hearing or some other means. *See Nicholson v. Delgadillo*, 2014 WL 6895566, at *2 (D. Idaho Dec. 5, 2014) (citations omitted). A plaintiff's burden "in 'proving up' damages is relatively lenient." *Id.*

As for the $61,000 compensatory damage award, the Court finds that the Magistrate Judge fully supported his recommendation with citations to the testimony of the witnesses. He considered Plaintiff's credible testimony as to the effects on his psyche of Defendant's sexual abuse and the support given to that testimony by Plaintiff's lay witness. Ultimately, he did not attribute all of Plaintiff's symptoms to that abuse because Defendant Hooker was not the sole cause of Plaintiff's trauma. The Court rejects any suggestion by Defendant that his abuse of Plaintiff did not result in any emotional damage to him. The Magistrate Judge adequately explained in his report how he calculated the recommended amount of compensatory damages, and his explanation is

---

[2] Defendant uses the term "alleged" conduct. However, as noted above, the granting of a default judgment established Plaintiff's allegations as being factual.

fully supported by the record. Accordingly, the Court affirms the portion of the report and recommendation as to compensatory damages.

Turning to the award of punitive damages, Plaintiff correctly points out in his objections that punitive damages should bear a "reasonable relationship" to the compensatory damages award. (*Id.* p. 4. (citing *Goff v. Elmo Greer & Sons Const. Co.*, 297 S.W.3d 175, 193 (Tenn. 2009)).

> Although the Court has repeatedly refused to "impose a bright-line ratio which a punitive damages award cannot exceed," the Court has also stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages ... will satisfy due process."

*Goff*, 297 S.W.3d at 193 (quoting *State Farm*, 538 U.S. at 425). The Supreme Court has determined that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996.) "A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Id.* The Supreme Court has reiterated the underlying principle that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 419 (quoting *Gore*, 517 U.S. at 575).

Here, Defendant's conduct was clearly reprehensible. The record establishes that he abused his position in the church by sexually assaulting Plaintiff, a teenage member of that church. The Court credits Plaintiff's testimony that he has suffered extensively as a result of that conduct. The ratio recommended by the Magistrate Judge in this case is 1:3 ($20,000 to $61,000). It appears to the Court that a more appropriate ratio is 1:1 to reflect the enormity of Defendant's conduct, especially in light of the relatively low amount of the compensatory damages award. Consequently, the Court will award Plaintiff $61,000 in punitive damages.

In summary, the objections of both Plaintiff and Defendant are overruled, and the report and recommendation of the Magistrate Judge is **PARTIALLY ADOPTED**. Judgment will be entered in favor of Plaintiff and against Defendant Hooker in the amount of $61,000 in compensatory damages and $61,000 in punitive damages for a total of $122,000.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 8, 2025.